**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>ROOM 2060<br>NEWARK, NJ 07101<br>973-297-4903 |

March 9, 2006

Michael T. Kearns, Esq.
Hoagland, Longo, Moran, Dunst & Doukas, LLP
40 Paterson Street, P.O. Box 480
New Brunswick, New Jersey 08903

Steven P. Del Mauro, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962

**LETTER OPINION**

Re:   **Bernard J. Berger, M.D. v. Unum Life Insurance Company of America**
      **Civil Action No. 05-2905 (JAP)**

Dear Counsel:

      Before me is the motion of defendant, Unum Life Insurance Company of America ("Unum"), for a protective order pursuant to Fed. R. Civ. P. 26(c) to limit discovery to the administrative record under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq. Having considered the moving and reply papers of Unum, and the opposition brief of plaintiff, Bernard J. Berger, M.D. ("Berger"), and having heard oral argument on December 8, 2005, and for the reasons set forth below, Unum's motion for a protective order limiting discovery to the administrative record is denied, because ERISA does not govern this action.

Page 2

## FACTUAL BACKGROUND

On September 12, 2001, Berger was terminated from his employment at Synavant, Inc. due to a reduction in force. (Certification of Counsel Steven P. Del Mauro ("Del Mauro Cert.") ¶ 12). As an employee, Berger had group long-term disability coverage under a policy issued by Unum. (Del Mauro Cert. ¶ 3). The group policy contained a section entitled "Long-Term Disability – Other Benefit Features" which provided:

**WHAT INSURANCE IS AVAILABLE IF YOU END EMPLOYMENT?**

(Conversion)

If you end employment with your Employer, your coverage under the plan will end. You may be eligible to purchase insurance under UNUM's group conversion policy. To be eligible, you must have been insured under your Employer's group plan for at least 12 consecutive months. We will consider the amount of time you were insured under the UNUM plan and the plan it replaced, if any. You must apply for insurance under the conversion policy and pay the first quarterly premium within 31 days after the date your employment ends.

> **UNUM WILL DETERMINE THE COVERAGE YOU WILL HAVE UNDER THE CONVERSION POLICY. THE CONVERSION POLICY MAY NOT BE THE SAME COVERAGE WE OFFERED YOU UNDER YOUR EMPLOYER'S GROUP PLAN.**

(Del Mauro Cert., Ex. 1) (emphasis added).

On October 18, 2001, Berger applied with Unum for conversion coverage pursuant to the terms and provisions of the group policy. (Id., Ex. 3). On November 8, 2001, Berger received a Conversion Certificate from Unum with an effective date of September 12, 2001. (Id., Ex. 4). The cover letter stated that "[t]he coverage provided may not be identical to the protection provided

under your group contract." ( Id.)  The letter also stated that the premium due on his next generated bill will reflect a quarterly premium with any adjustments.  ( Id.)

On January 10, 2003, Berger applied for long-term disability benefits.  (Complaint, First Count ¶ 2).  By letter dated July 29, 2003, Unum denied plaintiff"s request for benefits.  (Complaint, First Count ¶ 4).  Thereafter, on April 27, 2005, Berger filed this action alleging that the denial was improper and in bad faith and seeking damages.  (Complaint at 1-2.)  Thereafter, Unum removed this action on the ground that it is governed by ERISA or, alternatively, on diversity grounds.  (Notice of Removal ¶¶ 6-11).

By this motion, defendant Unum seeks a protective order limiting discovery to the administrative record on the theory that the claims are governed by ERISA.  Plaintiff seeks broader discovery on the grounds that ERISA does not preempt the state claims asserted here.

## DISCUSSION

The legal question presented here is whether ERISA preemption applies to claims arising from a conversion policy.  The starting point for analysis is the statute itself.  Section 1144(a) states that the provisions of ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan." 29 U.S.C. §1144(a) (emphasis added).  Thus, the Court must consider whether the conversion policy is sufficiently "related to" the ERISA plan to warrant preemption.

There is a split in the Circuits as to whether conversion policies are governed by ERISA.  On the one hand, the Ninth and First Circuits have held that a conversion policy is not preempted by ERISA.  See, e.g., Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872 (9th Cir. 2001), Demars

v. Cigna Corp., 173 F.3d 443 (1st Cir. 1999).

On the other hand, the Eighth Circuit Court of Appeals and other district courts have held that ERISA regulations extend to conversion policies. See, e.g., Painter v. Golden Rule Ins. Co., 121 F.3d 436, 439-40 (8th Cir. 1997), Nechero v. Provident Life & Accident Ins. Co., 795 F. Supp. 374, 381 (D.N.M. 1992). Neither the Third Circuit nor this District Court has squarely addressed the issue of whether a conversion plan is preempted by ERISA.

This Court is satisfied that the First and Ninth Circuits' reasoning is persuasive here. In Demars, the First Circuit concluded that claims arising under a converted policy are not "related to" an ERISA plan for purposes of preemption. 173 F.3d at 445. The Court reasoned that this is consistent with the purpose of the statute: "to safeguard employee interests by reducing the threat of abuse or mismanagement of funds . . . while at the same time safeguarding employer interests by eliminating the 'threat of conflicting and inconsistent State and local regulation.'" See id. (citations omitted). The Court concluded that neither concern is implicated with respect to a conversion policy since it is the insurer who issues the policy and bears any administrative burden. Id.

Following Demars, the Ninth Circuit reached a similar conclusion in Waks. The Court explained:

> A converted policy is created when an ERISA plan participant leaves the plan and obtains a new, separate, individual policy based on the conversion rights contained in the ERISA plan. The contract under the converted policy is directly between the insurer and the insured. It is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan. There are also no relevant administrative actions by the employer.

263 F.3d at 876.

Page 5

That reasoning applies with equal force here. The original policy makes clear that the "conversion policy" is an entirely new and separate agreement between the insured and Unum. The policy states that: "[i]f you end employment with your Employer, your coverage under the plan will end." See Del Mauro Cert., Ex. 1 (emphasis added). There is no obligation for Unum to provide coverage; the ERISA policy states that the employee "may be eligible to purchase insurance under UNUM's group conversion policy." Id. (emphasis added). It equally makes clear that the coverage may not be the same under the new policy: "[t]he conversion policy may not be the same coverage we offered you under your Employer's group plan." Id. Thus, here, as in Waks, there is a new, separate, policy based on conversion rights contained in the ERISA plan. It is independent of the ERISA plan and, therefore, should not be governed by ERISA.

Defendant attempts to distinguish Waks and Demars on the grounds that each involved a conversion of an individual policy as opposed to a group policy, such as Berger had here. However, the Court in Demars squarely addressed and rejected that very distinction:

> By attempting to distinguish between group and individual conversion policies, the Glass decision misunderstands the logic of Mimbs. Both types of conversion policy fall outside the reach of ERISA, since what matters for ERISA purposes is not the nature of the conversion policy but rather the nature of the employer's ongoing administrative and financial ties to the policy. If no such ties exist, the policy should not be subject to ERISA regulation.

173 F.3d at 450 (citing Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341 (11th Cir. 1994); Mimbs v. Commercial Life Ins. Co., 818 F. Supp. 1556 (S.D. Ga. 1993)).

Page 6

## CONCLUSION

This Court is persuaded by the reasoning of <u>Demars</u> and <u>Waks</u>.  Defendant's application for a protective order limiting discovery to the administrative record is denied.   A status conference is scheduled for **March 29, 2006 at 3:30 p.m.**  Prior to the March conference, the parties should submit a revised discovery plan consistent with this opinion.

**SO ORDERED.**


        <u>s/Madeline Cox Arleo</u>
        **MADELINE COX ARLEO**
        **United States Magistrate Judge**

cc:    Clerk
       Hon. Joel A. Pisano, U.S.D.J.
       All Parties
       File